[Cite as *In re W.A.J.*, 2014-Ohio-604.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99813**

---

# IN RE:   W.A.J., JR. and A.P.

# Minor Children

[Appeal by Mother, R.P.]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 09917803 and AD 09917809

**BEFORE:**   Stewart, J., S. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   February 20, 2014

**ATTORNEY FOR APPELLANT MOTHER**

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, OH   44113

**ATTORNEYS FOR APPELLEE CUYAHOGA COUNTY DIVISION OF CHILDREN AND FAMILY SERVICES**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:   Pamela A. Hawkins
Assistant County Prosecutor
Cuyahoga County Division of Children and Family Services
3955 Euclid Avenue
Cleveland, OH   44115

**ATTORNEY FOR CHILDREN**

Brian W. Sharkin
Law Office of Brian Sharkin
P.O. Box 770824
Lakewood, OH   44107

**GUARDIAN AD LITEM FOR CHILDREN**

Daniel J. Bartos
Bartos & Bartos, L.P.A.
20220 Center Ridge Road, Suite 320
Rocky River, OH   44116

**GUARDIAN AD LITEM FOR MOTHER**

Gregory T. Stralka
6509 Brecksville Road
P.O. Box 31776
Independence, OH   44131
MELODY J. STEWART, J.:

**{¶1}** The court terminated appellant-mother R.P.'s custody of two of her children, W.A.J., Jr., and A.P., and granted legal custody of the children to a person who is unrelated to them, but whom they consider to be an aunt. The mother complains the court failed to articulate a sufficient evidentiary basis for the decision to place the children with the surrogate aunt and that the court's decision was not in the best interest of the children.

## I

**{¶2}** This appeal involves the loss of legal custody under R.C. 2151.353(A)(1)(3) rather than the termination of parental rights. In *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, we stated the following about the differences between legal custody and the termination of parental rights:

> [the loss of] legal custody is significantly different than the termination of parental rights — despite losing legal custody of a child, the parents of the child retain residual parental rights, privileges, and responsibilities. R.C. 2151.353(A)(3)(c). For this reason, we apply the less restrictive "preponderance of the evidence" standard of appellate review to the court's factual findings. *In re S.E.*, 8th Dist. Cuyahoga No. 96031, 2011-Ohio-2042, ¶14, citing *In re Nice*, 141 Ohio App.3d 445, 455, 2001-Ohio-3214, 751 N.E.2d 552 (7th Dist.). However, when considering the court's ultimate decision on whether the facts as determined would make it in the child's best interests to be placed in legal custody, we apply the abuse of discretion standard. *In re B.H.*, 8th Dist. Cuyahoga No. 95794, 2011-Ohio-1967, ¶10.

*Id*. at ¶ 14.

**{¶3}** R.C. 2151.353(A)(3) allows the court to award legal custody of a child who has been adjudicated abused, neglected, or dependent, to any person who, prior to the dispositional hearing, filed a motion requesting legal custody of the child. Apart from

the requirement that the child be previously adjudicated as abused, neglected, or dependent, the court's authority to award legal custody under R.C. 2151.353(A)(3) is limited only by the best interests of the child (assuming the person seeking legal custody has complied with the statutory prerequisites).

{¶4} The mother makes no argument that the prerequisites for an award of legal custody were not met. The children were declared neglected and dependent in September 2009 and placed in the temporary custody of appellee Cuyahoga County Division of Children and Family Services (the "agency"). The neglect and dependency finding was based on allegations that the mother had for years permitted one of her five children to sexually molest another one of her children (those children were the subject of a separate custody proceeding). The mother was subsequently convicted of attempted child endangering. With the exception of the child who committed the acts of molestation, the four remaining children were placed with the aunt and remained with her until the time of the hearing.

{¶5} Additionally, the complaint for temporary custody charged that A.P. suffered severe asthma attacks, caused in part by the mother's smoking in the house, yet the mother did not consistently follow up with the child's medical care. Finally, the agency alleged that the mother had emotional issues, including a major depressive disorder with a psychotic component. These facts were sufficient to establish that the children were neglected and dependent as a predicate for the agency to seek legal custody.

II

**{¶6}** To resolve the question of whether granting legal custody would be in the best interest of the children, the court made factual findings in which it concluded that the mother had, despite diligent case planning by the agency toward the goal of reunification, failed to remedy the problems that caused the children to be removed from her. The court found that the mother had not substantially complied with the case plan and failed to demonstrate a commitment to the children by providing them with a permanent home. The mother contests these findings, particularly her failure to show substantial compliance with the case plan, as being unsupported by the evidence.

A

**{¶7}** To the extent the court's findings were premised on factual determinations, we review those facts under a preponderance of the evidence standard. *In re S.E.*, 8th Dist. Cuyahoga No. 96031, 2011-Ohio-2042, ¶ 14, citing *In re Nice*, 141 Ohio App.3d 445, 455, 2001-Ohio-3214, 751 N.E.2d 552 (7th Dist.).

1

**{¶8}** The mother was found guilty in a criminal child endangerment prosecution relating to her failure to stop the molestation of one of her children. She served one year in prison, during which time the children were living with the aunt. The case plan adopted by the agency required the mother to establish stable housing upon the mother's release from prison. She obtained housing and showed her case worker a lease bearing her name and the name of another person as the tenants. The agency told the mother that if she was living with someone, that person would have to undergo a background check.

The mother insisted that she was living alone and the other person signed the lease as an accommodation because nobody would rent to her.

{¶9} Questions about the mother's living arrangement remained when a case worker discovered that the mother was in fact living with someone else and that person's children. The case worker said that the mother's house was usually neat and clean, but that on a later visit to the house she found it in such disarray that it looked as though it had been "tossed" and that she found school books and homework belonging to other children. The case worker testified that two of the mother's children independently verified to her that others were living with them. The mother continued to deny that she was sharing her home with another family and called her own children "liars." The case worker believed it was the mother who was being untruthful.

2

{¶10} The case plan also expressed concerns regarding the mother's physical and mental health.

{¶11} The mother's health became a growing concern for the agency after she began having seizures following her release from prison. These seizures sometimes required the mother's hospitalization and were affecting her visitation schedule with the children. The case worker was unable to verify the types of medication prescribed to the mother, and the mother took the case worker's inquiries about her physical condition as a form of "gossiping." At the same time, in March 2012, the mother was receiving medical treatment relating to her kidneys and blood work performed in conjunction with

that treatment tested positive for marijuana. The case worker attempted to have the mother submit to a drug screening, but the mother suffered a seizure while waiting to submit a sample and was hospitalized.

{¶12} The case worker testified that in addition to the mother's physical health, there were concerns about her mental health status. The mother qualified for and received Social Security Disability benefits, but told the case worker that she did not know why she was receiving those benefits. This lack of knowledge was despite entering a plea of not guilty by reason of insanity during her trial for child endangerment relating to the molestation of one of her children. The case worker did verify that the mother was taking antipsychotic medication. However, the mother failed to provide her case worker with a progress note that would show whether she had been compliant with her mental health services.

3

{¶13} Most recent to the hearing were new revelations of the mother's drug use.

{¶14} Questions about the mother's drug use began in May 2012, after a new case worker learned that the mother failed a drug screening by testing positive for marijuana and PCP. The agency referred the mother for a drug and alcohol assessment, but the mother could not verify her completion of the program. In September 2012, at the time of the hearing before a magistrate on the agency's motion for legal custody, the mother provided the case worker with a new assessment that showed she was still testing positive for PCP. The agency also learned that the drug test sample submitted by the mother may

have been diluted, suggesting that the mother tampered with the sample to avoid a positive result. This new test result caused the agency to recommend that the mother enter an outpatient drug treatment program. The mother was to begin outpatient treatment after the hearing concluded.

4

{¶15} Finally, the court heard evidence relating to the mother's lack of parenting skills.

{¶16} The mother's parenting skills were plainly an issue in light of her conviction for attempted child endangering. The facts of that criminal case, which led the agency to seek emergency temporary custody of the children, showed that the mother was aware that one of her children had repeatedly sexually molested another one of her children, but did nothing to stop it.

{¶17} After the mother's release from prison, concerns about her parenting skills were raised by a case worker and a psychologist who treated A.P. These witnesses collectively expressed their concerns that the mother was too lenient with the children. Both W.A.J., Jr., and A.P. said that they wished to remain with the mother because they could "go outside and play more when they want to, eat more junk food, stay up a little bit later." The psychologist testified to her concerns that the mother failed to provide an environment with "limits, rules, and structure" and that she always says "yes" to the children.

B

**{¶18}** The mother did not testify or offer any evidence at the hearing. A case worker testified that the mother completed a number of parenting and self-esteem classes while in prison, and the mother premised her case primarily on that evidence to prove that she substantially complied with the case plan. This argument, however, misconstrues completion of a case plan as an automatic path to reunification.

**{¶19}** The successful completion of a case plan "is not dispositive on the issue of reunification." *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶ 25 (8th Dist.). Indeed, "[a] parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed — the case plan is simply a means to a goal, but not the goal itself." *Id.*

**{¶20}** The above principles presume completion of a case plan, and it is not at all clear that the mother completed the objectives set by the case plan. For example, the agency set a goal that the mother obtain stable housing. The word "stable" means more than just the permanency of the dwelling itself — it also refers to the conditions inside the home. The mother did obtain housing, but the evidence showed that she was living with another family who had not been vetted by the agency. A case worker noted that the mother normally kept a neat house when she and her family lived alone, but that when the mother shared a house with another family, the house was in disarray.

**{¶21}** Additionally, the mother's completion of parenting skills courses did not mean that she proved her competency to parent. As previously noted, the mother's lack of discipline gave the psychologist reason to be concerned about her ability to put limits

on the children. And the children posed certain difficulties beyond the problems posed in normal child-rearing: A.P. had been labeled as having a serious emotional disturbance and was receiving counseling for "ongoing behavioral issues." So despite completing parenting courses, the mother had not satisfied the court that she fulfilled the goals of her case plan and removed the conditions that caused the children to be removed from her home.

## III

**{¶22}** The final issue is whether the court abused its discretion by finding that it would be in the children's best interest to be placed in the aunt's legal custody.

**{¶23}** R.C. 2151.353 does not provide factors that the court should consider to determine the child's best interest in a request for legal custody. *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, ¶ 13. Some courts have employed the best interest factors set forth in R.C. 2151.414(D) that must be considered before a court can terminate parental rights; other courts have considered the best interest factors set forth in R.C. 3109.04(F) that must be considered before allocating parental rights in domestic relations child custody cases. In *In re G.M.*, we found that principles of statutory construction meant that the absence of best interest factors in R.C. 2151.353 compelled the presumption that "the legislature did not intend to require the consideration of certain factors as a predicate for granting legal custody." *In re G.M.,* 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, at ¶ 16. We found that the courts were free to consider the best

interest factors set forth in other statutes to guide their discretion in determining legal custody issues, but were not compelled to consider those statutes. *Id.*

{¶24} Given the court's factual findings, we cannot say that its determination that it would be in the best interest of the children to be placed in the legal custody of the aunt was so arbitrary and capricious that it constituted an abuse of discretion. The mother's refusal to stop ongoing sexual molestation in her home was a grave parenting failure. Although she completed a number of parenting courses while in prison, the mother displayed poor judgment by living with another family without getting prior approval from the agency. She then showed mendacity when confronted with that fact and accused her own children of lying about it.

{¶25} Perhaps most troubling was the mother's drug use at a time when she was about to go to court to get back her children. Compounding the seriousness of her drug use was her documented mental and physical health issues: the mother was taking antipsychotic medication and suffered from random seizures. Any one of these factors would have been cause for concern; combined, the drug, mental, and physical issues were so serious that they could place the children in physical jeopardy.

{¶26} It is true that the children wished to remain with the mother, but the court heard evidence suggesting that this was because the mother was so lax with her discipline. One of the children had significant behavioral issues and would likely benefit from a home environment that was more structured than the one the mother was providing. In any event, the children had lived with the aunt for well over two years at

the time of the hearing, were adjusted to living with her, and were not experiencing any problems with the aunt. What is more, the aunt had been, and continued to be, committed to integrating the mother into the children's lives. The aunt expressed her desire that the mother continue to have access to the children, so even though the mother was losing legal custody, she was not losing all contact with her children.

{¶27} We therefore find that the court did not abuse its discretion by finding it would be in the best interest of the children to be placed in the legal custody of the aunt.

{¶28} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas — Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, JUDGE

SEAN C. GALLAGHER, P.J., and
TIM McCORMACK, J., CONCUR