[Cite as *In re A.S.*, 2014-Ohio-3035.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 100530 and 100531**

# IN RE: A.S. AND C.S.
## Minor Children

[Appeal by K.C., Mother]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 12904790 and AD 09921174

**BEFORE:** McCormack, J., E.A. Gallagher, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** July 10, 2014

**ATTORNEY FOR APPELLANT**

Gregory T. Stralka
6509 Brecksville Road
P.O. Box 31776
Independence, OH 44131


**ATTORNEYS FOR APPELLEE**

**For C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Joseph M. Cordiano
Assistant County Prosecutor
3955 Euclid Avenue
Cleveland, OH 44115

**For Father**

Patrick S. Lavelle
Van Sweringen Arcade
123 West Prospect Avenue
Suite 250
Cleveland, OH 44115

**Guardian Ad Litem for Children**

Amy K. Habinksi
Habinski Law Offices L.L.C.
11470 Euclid Avenue
Suite 342
Cleveland, OH 44106

**Guardian Ad Litem for Mother**

Daniel J. Bartos
Bartos & Bartos L.P.A.
20220 Center Ridge Road
Suite 320
Rocky River, OH 44116

TIM McCORMACK, J.:

{¶1} Appellant, K.C. ("Mother"), appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, that granted legal custody of her minor children, C.S. and A.S., to the children's maternal grandmother, A.C. ("Grandmother"). After a careful review of the record, we affirm the juvenile court's determination.

## Background

{¶2} This matter originated in November 2009, when the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "the agency") filed a complaint alleging neglect and a motion for temporary custody of C.S., who was born in August 2009. The complaint alleged acts of domestic violence by Mother and Father and lack of parenting skills of Mother. The court held an adjudicatory hearing in January 2010 and found C.S. to be dependent. Following a dispositional hearing in February 2010, the court granted temporary custody of C.S. to the agency. In July 2010, the agency filed a motion to modify temporary custody to legal custody to Grandmother. On August 10, 2011, the trial court denied the agency's motion and terminated temporary custody, and C.S. was returned to Mother's custody, with protective supervision.

{¶3} Less than two weeks later, on August 22, 2011, the agency filed a motion to modify protective supervision of C.S. to, once again, temporary custody and a motion for pre-dispositional temporary custody. The motions were based on the agency's belief that C.S. was in immediate danger due to alleged contact with Father in violation of a prior

court order. That same day, the court ordered C.S. into the temporary care and custody of CCDCFS, and the child was placed in Grandmother's care. In December 2011, following a dispositional hearing, the trial court found that there had been "some compliance" with Mother's case plan and progress had been made in allowing the child to remain in the home. After reminding Mother to abide by the court's order of no contact with Father, the court denied the agency's motion for temporary custody. The agency filed objections to the court's order, which were overruled on April 13, 2012. C.S. was returned to Mother's legal custody with protective supervision.

{¶4} Prior to C.S.'s return to protective supervision with Mother, in March 2012, A.S. was born. Approximately two weeks later, the agency filed a complaint for dependency and temporary custody of A.S. The complaint alleged continued acts of domestic violence, Father's anger management issues, the dependency adjudication of another child, and the parents' failure to remedy the conditions that caused the other child to be removed from the home. Following an adjudicatory hearing, A.S. was adjudicated dependent and ordered into the agency's temporary custody on August 30, 2012. In the meantime, the agency filed a motion to modify the protective supervision of C.S. to temporary custody on August 13, 2012. Mother filed a motion for legal custody of both children on August 22, 2012. On October 4, 2012, the trial court held a hearing, during which time it continued its prior order for protective supervision and allowed the agency additional time in which to file alternative dispositional motions.

**{¶5}** On October 19, 2012, CCDCFS filed two motions: (1) a motion to modify legal custody of C.S. to Mother with protective supervision to legal custody of C.S. to Grandmother; and (2) a motion to modify temporary custody of A.S. to the agency to legal custody of A.S. to Grandmother. Mother filed another motion for legal custody of both children on February 15, 2013, and a motion for increased visitation on March 12, 2013.

**{¶6}** On September 6, 2013, the court held a dispositional hearing on the agency's motions. Present for the hearing were CCDCFS social worker, Susan Frate; GAL for the children, Amy Habinski; and Mother, with GAL Daniel Bartos. Also present were Mother's attorney, the prosecuting attorney, and Father's attorney.

**{¶7}** Following the hearing, the court granted the agency's motions and awarded legal custody of C.S. and A.S. to Grandmother. The magistrate found that substantial progress on the case plan by Mother and Father had not been made and progress had not been made in alleviating the cause for removal of the children from the home. In finding the continued wardship of the children not in the children's best interest, the magistrate committed the children to the care and custody of Grandmother. The magistrate further found that the agency had made reasonable efforts to make it possible for the children to return to Mother. The magistrate stated, however, that both parents were referred for parenting, mental health services, and domestic violence/anger management classes, but the services were not effective. On September 24, 2013, the trial court approved and

adopted the magistrate's decision and awarded legal custody of the children to Grandmother, who filed a statement of understanding and indicated that she was willing to assume legal custody. Mother appeals from this decision.

## Substantive Facts

{¶8} CCDCFS filed its original complaint alleging the neglect of C.S. based upon concerns of domestic violence and the lack of proper parenting. The second complaint was filed after the birth of A.S., alleging the same concerns. Susan Frate, CCDCFS social worker, testified that the agency has maintained an open and active case with Mother since 2010, beginning with C.S. and then continuing with A.S., due to a "lengthy ongoing toxic relationship between [M]other and [F]ather," and "frequent police intervention."

{¶9} Frate testified that there were approximately 80 to 100 occasions concerning a domestic violence dispute between Mother and Father that involved police intervention. Two of the calls made to the police department were placed within one month of the trial held in September. According to Frate, over the course of the three years of the agency's involvement, the complaints included Father's physical violence, such as spitting in Mother's face, shoving her into a dresser, and twisting her arm, as well as Father verbally threatening to kill Mother and to "bash her head into a steering wheel."

{¶10} Tanya Sirl, police sergeant with the Parma Heights Police Department, testified concerning her personal knowledge of Mother and Father's lengthy history with

the police department. Sergeant Sirl testified that she has known Mother for approximately 15 years and, through her employment, has personal knowledge of the violent relationship between Mother and Father since 2008 or 2009. She stated that their relationship is very volatile and she often received calls to the department concerning their harassment of each other and their screaming arguments, including a time when Mother was pregnant with C.S. and a time after C.S.'s birth, when Mother was holding the child in her arms. Sergeant Sirl testified that Mother exhibited the classic signs of a victim of domestic violence, refusing to leave her abuser and declining to prosecute Father for any alleged violence against her.

{¶11} Grandmother also observed the violent relationship between Mother and Father. She testified that the violence escalated after C.S. was born.

{¶12} Due to the agency's concerns with the domestic violence and Mother's parenting in the home, the children were placed in the care of Grandmother, where they essentially lived for more than two years. A.S. has never lived with Mother. The agency developed a case plan in order to facilitate reunification with Mother. The case plan consisted of three objectives: domestic violence services, parenting services, and mental health services.

{¶13} Mental health services were offered for both parents. Father had been diagnosed with Intermittent Explosive Disorder, and Mother is bipolar. Frate testified that mental health services were offered because of the agency's concerns regarding the

parents' volatile behavior, Mother's erratic mood swings and tantrums, and frequent calls to the police department that led to several domestic violence charges on both parents.

{¶14} Father was referred to Centers for Families and Children and The Free Clinic for a psychological evaluation. Because Father was a previous client, the center recommended he continue with the medication he had previously been prescribed. Frate indicated that while it appeared that Father was taking his medication for a period of time, he did not maintain compliance with his medication or counseling. She testified that Father's behavior continued to be explosive and volatile, adding that "[h]e's not a pleasant person to be around." Although Father visited with the children on occasion, he did not visit consistently in a structured manner.

{¶15} Mother was already involved with the center when Frate became involved. Frate testified that Mother was seeing a mental health counselor and receiving medication from the center.

{¶16} Mother was referred to the Family Guidance Center and the YWCA for domestic violence counseling on four occasions. Frate testified that Mother has failed to benefit from the services because she continues to engage in a relationship with her abuser, Father, and she allows him to live in her home, thus failing to demonstrate the ability to protect herself or her children. Frate testified that Mother failed to complete the program successfully at the center, stating that she did not complete the individual counseling at the Domestic Violence Center, she did not complete her homework, and she

denied help with her homework when offered by Frate and the domestic violence service provider.

{¶17} With respect to parenting services, Mother was referred to a parenting class that she successfully completed. However, the agency referred Mother to the Early Intervention Program that provided one-on-one in-home services because C.S. had exhibited behavioral problems that Mother had difficulty controlling. Frate testified that although Mother has done well in the class and has participated, she does not believe Mother can handle parenting full time. Frate stated that Mother becomes very frustrated, does not take the initiative in visiting with her children, and when she does visit, it is sporadic. According to Frate, despite the fact that Mother lives across the hall from Grandmother's home, in the same apartment complex where the children reside, Mother "[visits] when she feels like it and does what she wants to do," and she doesn't visit unless she's asked to visit with her children.

{¶18} Frate testified that the children are doing well in Grandmother's care. Their health is good, and they are progressing well. In addition, Grandmother is able to provide a safe and stable environment for the children. Grandmother has been part of the court-ordered safety plan, providing a safe environment for the children during domestic violence incidents between Mother and Father. Grandmother indicated that she understands Mother's rights concerning visitation with the children and she understands her own responsibilities in caring for the children. Grandmother is willing to become

legal custodian of the children, and she believes it is in the best interest of the children to remove them from the violence in Mother's home.

{¶19} The children's guardian ad litem, Amy Habinski, testified that in her opinion, raising the children and providing them with a safe and stable environment is not a priority for either parent. She stated that "there is no reservation [in her mind] that legal custody to [Grandmother] is in the best interest of these children."

## Assignment of Error

The lower court erred when it granted legal custody of A.S. and C.S. under

the terms of [R.C. 2151.353].

## Legal Custody

{¶20} In her sole assignment of error, Mother argues that the trial court erred when it granted legal custody of her minor children to Grandmother. She claims that the trial court's decision was an abuse of discretion because the evidence showed that Mother had completed her case plan services.

{¶21} Parents have a constitutionally protected interest in raising their children. *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 15, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). That interest, however, is "'always subject to the ultimate welfare of the child." *Id.*, quoting *In re B.L.*, 10th Dist. Franklin No. 04AP-1108, 2005-Ohio-1151, ¶ 7.

**{¶22}** Under R.C. 2151.353(A)(3), the court may award legal custody of a child who has been adjudicated abused, neglected, or dependent, to any person who filed a motion requesting legal custody of the child prior to the dispositional hearing. Assuming the person seeking legal custody has complied with any statutory requirements, the court's authority to award legal custody under this statute "is limited only by the best interest of the child." *Id.*; *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604, ¶ 3. The best interest of the child is "of paramount concern" when making custody determinations. *In re M.J.M.* at ¶ 14.

**{¶23}** Legal custody is defined as follows:

> [A] legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21); *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, ¶ 11.

**{¶24}** Legal custody is significantly different than the termination of parental rights in that, despite losing legal custody of a child, the parents of the child retain residual parental rights, privileges, and responsibilities. *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14, citing R.C. 2151.353(A)(3)(c). In such a case, a parent's right to regain custody is not permanently foreclosed. *In re M.J.M.,* 8th Dist.

Cuyahoga No. 94130, 2010-Ohio-1674, at ¶ 12. For this reason, the standard the trial court uses in making its determination is the less restrictive "preponderance of the evidence." *Id.* at ¶ 9, citing *In re Nice*, 141 Ohio App.3d 445, 455, 2001-Ohio-3214, 751 N.E.2d 552 (7th Dist.). "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7.

{¶25} Unlike permanent custody cases in which the trial court is guided by the factors outlined in R.C. 2151.414(D) before terminating parental rights and granting permanent custody, R.C. 2151.353(A)(3) does not provide factors the court should consider in determining the child's best interest in a motion for legal custody. *In re G.M.* at ¶ 15. We must presume that, in the absence of best interest factors in a legal custody case, "the legislature did not intend to require the consideration of certain factors as a predicate for granting legal custody." *Id.* at ¶ 16. Such factors, however, are instructive when making a determination as to the child's best interest. *In re E.A.* at ¶ 13. The best interest factors include, for example, the interaction of the child with the child's parents, relatives, and caregivers, the custodial history of the child, the child's need for a legally secure permanent placement, and whether a parent has continuously and repeatedly failed to substantially remedy the conditions causing the child to be placed outside the child's home. R.C. 2151.414(D).

{¶26} Because custody determinations "'are some of the most difficult and agonizing decisions a trial judge must make,'" a trial judge must have broad discretion in considering all of the evidence. *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, at ¶ 10, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We therefore review a trial court's determination of legal custody for an abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶27} In this case, the record shows that while Mother was attempting to make progress toward her case plan, including seeing a mental health counselor and taking her medication, she failed to successfully complete the requirements of the domestic violence services. She did not complete the individual counseling at the Domestic Violence Center, she did not complete her homework, and she denied help with her homework when offered by the social worker and the domestic violence service provider.

{¶28} More significantly, Mother failed to remedy the domestic violence concerns that caused the initial removal of the children from her home. She maintained a relationship with Father, who did not maintain compliance with his medication or mental health counseling and continued to be explosive and volatile. The evidence showed that this ongoing relationship between Mother and Father resulted in approximately 80 to 100

police interventions, two of which occurred within one month of the trial. The fact that Mother still allowed Father to live with her, despite Father's continued violence and the agency's three-year involvement, demonstrates that any domestic violence services she had been receiving were clearly not effective. As a result, Mother failed to demonstrate the ability to protect herself or her children.

{¶29} Further, the social worker testified that she does not believe Mother can handle parenting full time. She stated that Mother becomes very frustrated with her children, does not take the initiative in visiting with her children, and when she does visit, it is sporadic. The children's GAL supported the social worker's testimony in reporting that Mother's behavior demonstrated that raising her children and providing a safe environment for them is not a priority.

{¶30} Mother argues that the evidence showed she was "doing well" with parenting skills, satisfied the mental health portion of the case plan, and attended some of the domestic violence classes. The successful completion of a case plan, however, "'is not dispositive on the issue of reunification.'" *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604, at ¶ 19, quoting *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶ 25 (8th Dist.). "A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed — the case plan is simply a means to a goal, but not the goal itself." *Id.*

{¶31} Therefore, even if Mother had shown that she completed her case plan, substantially or otherwise, the evidence demonstrated that Mother had not remedied the condition that initially caused the children to be removed from her home.

{¶32} Moreover, we are mindful that in making custody determinations, the trial court's principal concern is the children's best interest. While completing her case plan may be in Mother's best interest, this is not a factor in determining what is in the children's best interest. *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, at ¶ 14.

{¶33} Given the evidence presented at trial, we cannot say that the trial court's determination that it would be in the best interest of the children to be placed in the legal custody of Grandmother was arbitrary or unreasonable. The evidence shows that Mother has failed to provide a safe and stable home for herself or her children. She continued to maintain a volatile relationship with Father, allowing him to live with her, despite repeated incidents of violence and police intervention, some of which occurred in the presence of C.S., and continued involvement of CCDCFS. Such violence throughout the agency's involvement included physical attacks as well as verbal threats to kill Mother and "bash her head." The violence escalated with the birth of C.S. and continued after the birth of A.S.

{¶34} While Mother expressed an interest in custody of her children, the evidence shows that her relationship with her children was not a priority. She became frustrated

with her children and did not initiate visits with them, despite the children's accessibility across the hall from her own apartment. Mother's visits were sporadic and occurred only when asked to visit.

{¶35} Furthermore, in contrast, the evidence shows that Grandmother has provided a safe and stable home for C.S. and A.S. The children have lived with Grandmother for more than two years (A.S.'s entire life), and Grandmother has been part of the court-ordered safety plan, protecting the children from domestic violence incidents between Mother and Father. The evidence also shows that the children are doing well under Grandmother's care and she has provided for their basic needs. Finally, although Mother would lose legal custody of the children, she would continue to have access to them because Grandmother lives directly across the hall from Mother and Grandmother supports Mother's visitation of the children.

{¶36} In light of the above, we find that the trial court's decision was supported by a preponderance of the evidence and was in the best interest of the children. We therefore find that the court's award of legal custody to Grandmother was not an abuse of discretion.

{¶37} Mother's sole assignment of error is overruled.

{¶38} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

EILEEN A. GALLAGHER, P.J., and
MELODY J. STEWART, J., CONCUR