[Cite as *In re D.B.*, 2024-Ohio-1873.]

COURT OF APPEALS STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: D.B. | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 2023CA00162 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of Common Pleas, Case No. 2022JCV00242

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     May 15, 2024

APPEARANCES:

For Appellant Mother:

KATHALEEN O'BRIEN
116 Cleveland Ave. SW, Suite 303
Canton, OH 44702

Guardian Ad Litem:

ROBIN MINOR
110 Central Plaza South, Ste. 450
Canton, OH 44702

For Appellee Stark DJFS:

BRANDON J. WALTENBAUGH
221 Third St. SE
Canton, OH 44702

*Delaney, P.J.*

{¶1} Appellant Mother appeals from the November 14, 2023 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, awarding permanent custody of the minor child D.B. to appellee Stark County Department of Job and Family Services ("Agency").

{¶2} This case is related to, but not consolidated with, 5th Dist. Stark No. 2023CA00163, which is Father's appeal from the same Judgment Entry.

**FACTS AND PROCEDURAL HISTORY**

{¶3} Mother and Father are the natural Parents of D.B. (DOB: 4/30/2014). Beginning in September 2021, the Agency became "non-court involved" with the family due to drug abuse and domestic violence concerns. A Safety Plan was developed, but continued violations led the Agency to file a complaint alleging dependency and neglect of the child on March 8, 2022. Emergency temporary custody was awarded to the Agency, a guardian ad litem (G.A.L.) was appointed, and an Initial Case Plan was filed with the goal of reunification.

{¶4} D.B. was placed into relative kinship care with Maternal Cousin on March 5, 2022, and has remained in that placement for the pendency of the case. On March 10, 2022, a Proposed Legal Custodian's Statement of Understanding was filed for Maternal Cousin.

{¶5} In April 2022, Mother filed a motion to complete her parenting evaluation at Melymbrosia instead of Lighthouse Family Center.

{¶6} In May 2022, an adjudication hearing was held; Mother and Father both appeared with counsel. Upon conferring with counsel, Mother stipulated to a finding of

dependency. Testimony was taken as to Father and the trial court entered a finding of dependency. The trial court also denied Mother's motion to complete the parenting evaluation at Melymbrosia because the Agency made other concessions regarding the evaluation. Temporary custody was granted to the Agency.

{¶7} In September 2022, a case plan review packet was filed and a disposition review hearing was held. The child remained in the Agency's temporary custody and the trial court found compelling reasons to preclude a request for permanent custody.

{¶8} An amended case plan was filed on November 19, 2022, with a recommendation of reunification.

{¶9} On January 30, 2023, the Agency moved for permanent custody.

{¶10} In February 2023, a case plan review packet was filed and a dispositional review hearing was held. The trial court noted minimal progress was made in some areas and found no compelling reasons to preclude a request for permanent custody. An amended case plan was filed modifying visitation.

{¶11} On April 19, 2023, Father filed a motion for in-camera interview of D.B.

{¶12} On April 27, 2023, the Agency amended its motion for permanent custody and moved to extend temporary custody until September 8, 2023. Mother and Father stipulated to the extension of temporary custody; the trial court granted the extension, found it was not in D.B.'s best interest to reunify at that time, and found the Agency made reasonable efforts to reunite the family. However, service had not been completed and concerns leading to removal had not been alleviated.

{¶13} On September 13, 2023, the Agency filed an [amended] motion for permanent custody. Father filed a motion for an in-camera interview of D.B. which the trial court granted and interviewed D.B. on November 13, 2023.

{¶14} The G.A.L. filed reports on April 1, 2022; September 1, 2022; January 25, 2023; April 20, 2023; July 31, 2023; and November 9, 2023.

{¶15} A permanent custody trial took place on November 9, 2023. The following evidence is adduced from the record of the hearing.

*Caseworker's assessment: Parents failed to remedy behaviors and concerns*

{¶16} The family's ongoing Caseworker has been involved with the family since March 8, 2022. Caseworker met with the family at court, at their house, at the Agency, and in parking lots after Goodwill Parenting.  She called Parents at least once a month to answer questions and to discuss services, compliance, and drug screens.

{¶17} The original issues resulting in Agency involvement included domestic violence between Parents, substance abuse issues, and concerns for D.B.'s safety. Caseworker testified D.B. has been in the temporary custody of the Agency since disposition on May 4, 2022, or more than 12 months of a consecutive 22-month period. Caseworker testified Mother and Father have not been consistent with compliance throughout regular review hearings and D.B. needs and deserves permanency.

{¶18} Caseworker detailed the case plan developed to protect D.B., including a parenting assessment for Mother at Lighthouse Family Center and a parenting assessment for  Father at Melymbrosia, with  both  Parents  required  to  complete  all recommendations.  Parents were ordered to complete a CommQuest assessment for

drug and alcohol use, follow all recommendations, and maintain sobriety. Finally, the case plan required Parents to maintain stable housing and employment.

{¶19} The Agency paid for all costs of these services and had regular meetings with Parents to assess their progress and to encourage further work on the case plan.

{¶20} Mother missed some appointments but eventually completed the parenting assessment at Lighthouse with Dr. Thomas. Mother's diagnosis included Major Depressive Order--Recurrent; Dependent Personality Disorder; Other Specified Anxiety Disorder; Alcohol Use Disorder—Severe; Stimulant Use—Moderate; and ruled out Bipolar II Disorder. The parenting assessment recommended the following for Mother: comprehensive medical health services, including psychiatric services and counseling; take prescribed medications as directed; participate in drug and alcohol treatment with two 12-step meetings per week; successfully complete Goodwill Parenting after a period of sobriety; find employment independent of Father; and demonstrate the ability to protect herself. The case plan required Mother to follow and complete these recommendations.

{¶21} Caseworker feared for Mother's safety because Father was controlling. Father told Caseworker he controls Mother: he controls her employment and income because she works with him, he controls her cell phone, and he carries Mother's insurance card, driver's license, and keys. Caseworker found it difficult to work with each parent independently because Mother seems to be dependent on Father. Caseworker testified the concerns of domestic violence and concerns for Mother's safety continue.

{¶22} Mother was referred to individual counseling and case management services at Phoenix Rising. After a CommQuest evaluation, Mother was referred to Phoenix Rising for sobriety issues. Mother attended counseling with some missed

appointments, but Caseworker testified she saw no changes in Mother's behavior overall and the same concerns persisted.

*Temporary extension terminated by relapses*

{¶23} Parents did gain extra time to work on the plan. After filing the first motion for permanent custody, the Agency amended the motion and extended time for both parents to work on the case plan. Mother was referred to Goodwill Parenting but did not successfully complete the program. Caseworker testified Goodwill Parenting does not recommended reunification.

{¶24} The extension of temporary custody was based in part on a period of negative drug screens. From November 2022 until February 2023, both parents were referred to CommQuest for drug screens. After a period of noncompliance, Caseworker addressed the issue again; after a period of negative screens, Mother was allowed to enroll in Goodwill Parenting and temporary custody was extended.

{¶25} Temporary custody was extended because parents did make some progress on the case plan; they both had a period of sobriety; the home was structurally appropriate; and both were employed by Father's business. This interlude resulted in the referrals to Goodwill Parenting.

{¶26} In August 2023, however, both parents tested positive for cocaine, and were encouraged to reconnect with treatment and do a 12-step program. In September, both parents again tested positive for cocaine, and Mother tested positive in October. Father denied problems with substance abuse and there has been no change. Mother did not reconnect with services after her relapse and is not attending 12-step meetings.

{¶27} Father completed a parenting assessment at Melymbrosia and a report was submitted. The following recommendations were made: maintain sobriety, seek mental health treatment to specifically address control and domineering issues, and domestic violence treatment to address coping skills. These recommendations were part of the case plan and Father was required to follow all recommendations.

{¶28} Caseworker testified Father has complied with monthly mental health treatment at Phoenix Rising and has sometimes acknowledged issues, but has not changed his behavior. Caseworker testified about an incident in a different county involving domestic violence and substance abuse, resulting in criminal charges for Mother. Neither parent notified Caseworker of the incident.

{¶29} Father's parenting assessment determined that if he could maintain sobriety and complete all aspects of his case plan, D.B. could potentially be returned to his custody. However, after the referral to Goodwill Parenting Father was refused admittance due to a positive test for cocaine. Father did not complete case plan services and although he did make some progress, there has been no change in his behavior and the original safety concerns remain.

{¶30} Caseworker summarized that the family has been involved with the Agency for six months non-court and 18 months court involvement, but there is no significant change in the parents' risks or behaviors.

{¶31} Mother was required to make meaningful changes to reduce the risks that led to Agency involvement with the family. Mother was required to maintain complete and total sobriety to alleviate drug abuse concerns; and to successfully engage with counseling, learn coping skills, take prescribed medications, and follow all

recommendations to alleviate mental health concerns.  Mother was required to attend a 12-step program but only completed two meetings throughout the pendency of the case.

{¶32} Father did not report his drug use to the Agency or to his counselor and did not acknowledge his drug use even after testing positive for cocaine two months in a row. Father does not feel he has a problem with drug use and blamed Mother for his drug use.

{¶33} Caseworker testified parents are generally present and engaged at visitation with no major safety concerns.

*Dr. Thomas:  Reunification not recommended*

{¶34} Dr. Aimee Thomas completed Mother's parenting assessment and testified about her contact with Mother. Dr. Thomas found it unusual that Father sat with Mother in the waiting area of Thomas' office in possession of all of Mother's paperwork, including her driver's license and insurance card.  Mother disclosed multiple instances of domestic violence to Thomas in which Father was the perpetrator; D.B. witnessed many of these incidents. Mother said Father blamed her for the violence and Mother blamed herself. Mother agreed the violence increased with substance abuse. Based upon Mother's disclosures, Dr. Thomas has grave concerns for her safety and her failure to protect herself and D.B.

{¶35} Dr. Thomas noted Mother has an older child with a different father. When Father threatened to kill the older child's father, Mother's parenting time with that child was reduced to once a month with restrictions.  Dr. Thomas testified Mother has low self-esteem, low energy, and chemical dependency, and is entrenched in an unhealthy relationship. Mother is not treating her depression and did not take medication as prescribed.   Mother's diagnoses included major depressive disorder-recurrent,

dependent personality disorder, other specified anxiety disorder, rule out bipolar disorder, alcohol use disorder-severe, and stimulant use disorder-moderate. Dr. Thomas recommended that Mother not regain custody of D.B. if she remains in a relationship with Father unless Father successfully completes all aspects of his own case plan. Specifically, Thomas recommended Mother does not regain custody until both parents demonstrate an ability to abstain from all mood-altering substances for at least 9 months outside a controlled environment.

*Goodwill Parenting: Failure to remedy concerns*

{¶36} The Goodwill Skills Training Program Supervisor testified about the parents' referral to and progress in the Goodwill Parenting Program. Mother had consistent attendance, only missing once and tardy twice. Mother's individual goals were to address domestic violence and substance abuse, but none of Mother's goals adequately addressed those concerns. Mother tested positive for cocaine several times and was encouraged to re-evaluate her goals, but did not do so. Mother fails to recognize her triggers to prevent relapse and has no plan to protect herself and not use. Mother did not successfully complete the parenting program, is actively involved in a domestic violence relationship, did not demonstrate learning or change from the program, and received a certificate of non-compliance.

{¶37} Mother's supervised visits with D.B. were problematic because she did not take an active role, had inappropriate conversations with D.B., and caused stress to the child. Goodwill Parenting does not recommend reunification of D.B. with Mother. Mother did ask for assistance several times and assistance was provided, but Mother failed to meet either of her goals.

{¶38} Father was referred for an intake assessment at Goodwill Parenting, but was not accepted into the program due to a positive test for cocaine. Father did not accept responsibility for his cocaine use, claimed Mother forced him to use, and did not acknowledge domestic violence and controlling behaviors.

*Parents' witnesses: Some progress made*

{¶39} Mother's Counselor from Phoenix Rising testified that Mother has worked with her bi-weekly for over a year, addressing self-esteem, abstaining from substance abuse, conscious reactions, and calming skills. Counselor testified Mother has made progress but does not know Mother's mental health diagnoses and was only vaguely aware of the reasons for D.B.'s removal. Counselor was not surprised by the history of drug abuse and domestic violence, but did not recall specifics about Mother's relationship with Father.

{¶40} Father's Counselor from Phoenix Rising testified Father was consistent in his attendance from October 2021 through 2022. Counselor met with Caseworker and was aware of Father's domestic violence and drug abuse issues. Counselor worked with Father on accountability and testified that Father did take accountability for some of these issues. Counselor did acknowledge Father's relapse on cocaine and noted it was a concern because Father was not receptive to substance abuse treatment.

{¶41} Father's Case Manager at Phoenix Rising testified as a witness on his behalf, noting she met with Father several times a week and Mother was usually present also. Case Manager said the home was appropriate and in her opinion the parents were responding to treatment, were cooperative, and engaged. Case Manager did not witness any troubling interactions between the two.

*D.B. remains in relative placement*

{¶42} Upon his removal on March 6, 2022, D.B. was placed with Maternal Cousin and remains in her care. Caseworker testified D.B. loves Maternal Cousin, her partner, and her child, who is like a brother to him. D.B. feels safe and secure in the placement and is bonded with everyone in the home. Maternal Cousin is open to adoption.

{¶43} Caseworker testified D.B. loves Mother and Father, but does not feel safe and secure with them. There have been issues at visitation including parents whispering to D.B. and making him uncomfortable. Father has sometimes provoked upsetting and negative responses from D.B., who worries about the safety of Mother and himself. Caseworker and the G.A.L. testified any harm caused by termination of parental rights would be outweighed by the benefits of safety and permanency.

*Trial court's in-camera interview of D.B.*

{¶44} The trial court conducted an in-camera interview of the child in which he expressed love for his cousin and her family. The child was open and honest, and talkative. He loves his parents very much but is concerned for his safety if he returns home. D.B. is aware of how to hide and call 911 if he is scared; however, the last time he wanted to call 911, Mother took his phone away because Father has been "arrested enough times."

*G.A.L. recommends permanent custody to Agency due to lack of progress*

{¶45} On November 9, 2023, the G.A.L. filed her final report noting concerns with Parents' failure to make progress on the case plan. The G.A.L. cited Parents' drug use, failure to take responsibility for actions leading to D.B.'s removal, violence in the

relationship, mental health issues, and the child's expressed desire to remain in relative placement due to safety concerns with Parents.

{¶46} By Judgment Entry dated November 14, 2023, the trial court granted the Agency's motion for permanent custody of D.B. Both parents timely appealed from the order.

{¶47} In the instant appeal, Mother raises two assignments of error:

## ASSIGNMENTS OF ERROR

{¶48} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶49} "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## ANALYSIS

### I., II.

{¶50} Mother's two assignments of error are related and will be addressed together. Mother argues the trial court's decision granting the motion for permanent

custody is not supported by clear and convincing evidence and is against the manifest weight of the evidence. We disagree.

{¶51} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *See also*, *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel*, 55 Ohio St.3d at 74, 564 N.E.2d 54.

{¶52} "An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that

the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

{¶53} Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also*, *In re: Christian*, 4th Dist. Athens No. 04CA10, 2004-Ohio-3146; *In re: C. W.*, 2nd Dist. Montgomery No. 20140, 2004-Ohio-2040.

{¶54} We set forth a trial court's analysis of a permanent custody motion in *In the Matters of: A.R., B.R., W.R.*, 5th Dist. Stark Nos 2018CA00091, 2018CA00097, 2018CA00098, 2019-Ohio-389, paraphrased as follows:

When deciding a motion for permanent custody, a trial court must follow the guidelines provided in R.C. 2151.414. R.C. 2151.414(A)(1) requires the trial court to schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

Following a hearing on the motion, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) requires the trial court to consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C.

2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶55} We therefore review the following with the standard for permanent custody in mind.

*R.C. 2151.414(B)(1)(d)*

{¶56} In the instant case, the trial court concluded that R.C. 2151.414(B)(1)(d) applies to D.B., to wit, the child was in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period. D.B. was found to be dependent and placed in the temporary custody of the agency on May 4, 2022, over 12 months before the filing of the first motion for permanent custody on August 2, 2023. We find the trial court's judgment on this point is supported by competent, credible evidence. *Schiebel*, supra, 55 Ohio St.3d at 74.

{¶57} Mother does not challenge the trial court's finding pursuant to R.C. 2151.414(B)(1)(d). This Court has adopted the position that proof of temporary custody with an agency for twelve or more months of a consecutive twenty-two-month period alone is sufficient to award permanent custody. *Matter of O.M.*, 5th Dist. Coshocton No. 20CA0017, 2021-Ohio-1310, 2021 WL 1424200, ¶ 33, citing *In the Matter of A.S., V.S., and Z.S.*, 5th Dist. Delaware No. 13 CAF 050040, 2013-Ohio-4018. Therefore, a finding that grounds existed for permanent custody cannot be against the manifest weight of the evidence. *In re G.H.*, 5th Dist. Licking No. 2022 CA 00026, 2022-Ohio-4496, ¶ 51, citing *Matter of L.G.*, 5th Dist. Stark No. 2020-CA-00139, 2021-Ohio-743, ¶ 36.

*Findings pursuant to R.C. 2151.414(E)*

{¶58} If the child is not abandoned or orphaned, as is the case here, the focus turns to whether the child cannot be placed with Mother within a reasonable period of time or should not be placed with Mother. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶59} Relevant here, R.C. 2151.414(E)(1) states:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

*Best Interests*

{¶60} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this

section apply in relation to the parents and child.

*Mother's arguments*

{¶61} We find the Agency presented sufficient competent, credible evidence to demonstrate that the child cannot or should not be placed with Mother as notwithstanding reasonable efforts on behalf of the Agency, Mother failed to remedy the problems that initially caused removal of D.B. from the home.

{¶62} Mother argues she "substantially complied" with components of her case plan including stable housing, a job, counseling, "periods of sobriety," an improved relationship with Father, and visitation with the child; Mother asserts her progress on the case plan should have prevented the trial court's granting of permanent custody. We disagree with Mother's characterization of "progress." Agency involvement began in September 2021, arising from concerns for domestic violence in the home, among other issues. As of the permanent custody trial, Mother and Father continue to live and work together without substantially addressing the domestic violence issues. Mother attended counseling sporadically, but failed to take required psychiatric medication. Both parents had brief periods of sobriety, but Mother relapsed and used cocaine in August, September, and October 2023. Mother did not successfully complete parenting classes. Dr. Thomas assessed Mother and was very concerned about Father's control over her and her substance abuse; Thomas opined Mother did not have the ability to protect herself and her child because of her untreated mental health issues. At Goodwill Parenting, Mother acknowledged she was in an abusive relationship but remained in the relationship.

{¶63} Witnesses also testified to concerns regarding Mother's interactions at visitation with D.B. Mother was uninvolved, allowed staff to parent the child, and had inappropriate conversations with D.B.

{¶64} There is no dispute Mother made progress on portions of the case plan, but the primary goal is not to simply complete the case plan. *In re T.H.,* 5th Dist. Muskingum No. CT2016-0009, 2016-Ohio-7312, ¶ 42. Even the successful completion of a case plan is not dispositive on the issue of reunification. *Matter of N.D.*, 5th Dist. No. 2022CA00104, 2023-Ohio-439, 208 N.E.3d 859, ¶ 26, citing *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604. Where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *Id.,* citing *In the Matter of A.L. and J.L.*, 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481. Upon our review of the record, we find the trial court's findings of fact and conclusions of law are supported by clear and convincing evidence; Mother has not made sufficient progress to create any reason to believe reunification with the children would be safe or successful.

{¶65} We do not discern, and Mother does not point to, any evidence in support of her assertion that she can keep D.B. safe or provide him with an appropriate environment. See, *In re A.K.*, 5th Dist. Morgan No. 22AP0008, 2023-Ohio-2705, ¶ 34.

{¶66} D.B. is healthy and on target with development for his age. He is bonded to everyone in Maternal Cousin's home and considers them his family. D.B. is capable of advocating for himself; he feels safe in his relative placement but not with parents. He

told the trial court he knows his parents drink and fight too much; he knows how to call 911 but last time was discouraged from doing so.

{¶67} D.B. deserves safety and permanency and Mother is not in a position to provide either. She has not provided a safe environment for D.B., and the ongoing domestic violence relationship with Father is a direct risk, especially when both parties cannot maintain sobriety. Mother has not completed case plan requirements and has not reduced risk for the child.

{¶68} Upon our review of the record, we find no evidence Mother is equipped to handle the child's physical and emotional needs. The trial court properly conducted a review of the best interest of D.B. and issued specific findings of fact based on the evidence in the record supporting its decision. The child deserves permanency and Mother is not presently in a position to provide for his needs.

{¶69} The trial court found reunification with Mother was not in the child's best interests. D.B. is doing well in his relative placement, and there is a possibility of adoption. Caseworker and the GAL both recommended permanent custody of the child to the Agency. Any harm caused by severing any bond with Mother is outweighed by the benefits of permanence for the child.

{¶70} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re A.R.*, 5th Dist. Stark No. 2022CA00148, 2023-Ohio-1359,

¶ 51, citing *In re E.H.*, 5th Dist. Stark No. 2022CA00007, 2022-Ohio-1682, ¶ 101, internal citations omitted.

{¶71} Based on the foregoing, the trial court's findings that Mother failed to remedy the conditions that existed at the time of D.B.'s removal, that the child could not be placed with Mother in a reasonable amount of time, and should not be placed with Mother are not against the manifest weight of the evidence, and are supported by sufficient evidence. We further find the trial court's finding that the best interests of D.B. are served by a grant of permanent custody to the Agency is not against the manifest weight of the evidence and is supported by sufficient evidence.

## CONCLUSION

{¶72} Mother's two assignments of error are overruled and the judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed.

By: Delaney, P.J.,

Wise, J. and

Baldwin, J., concur.