[Cite as *In re D.P.*, 2011-Ohio-1907.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

D.P. and G.P.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Sheila G. Farmer, J.
Hon. Patricia A. Delaney, J.

Case No. 2010CA00348

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Juvenile Division, Case No. 2009JCV00272 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 18, 2011 |
| APPEARANCES: | |

For Appellee

For Appellant

JERRY COLEMAN
Legal Counsel
Stark County Job and Family Services
221 Third Street, S.E.
Canton, Ohio 44702

KIMBERLY L. STOUT
Stark County Public Defender Office
200 West Tuscarawas St., Suite 200
Canton, Ohio 44702

*Hoffman, P.J.*

{¶1} Appellant Jesse Percy ("Father") appeals the November 22, 2010 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which overruled his motion to set aside the magistrate's September 13, 2010 Order granting a change of legal custody of his two minor children to the children's maternal grandparents. Appellee is the Stark County Department of Job and Family Services ("SCDJFS").

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant and Tiffany Bolen ("Mother") are the biological parents of D.P. (DOB 11/1/01) and G.P. (DOB 4/23/05). On March 12, 2009, SCDJFS filed a complaint in the Stark County Court of Common Pleas, Juvenile Division, alleging the children to be dependent and neglected.

{¶3} According to the complaint, SCDJFS had been working with the family on a non-court basis since September, 2008. SCDJFS's initial concern centered around Mother's being involved in a car accident while being intoxicated. Police officers found Mother passed out in her home. Mother was charged with leaving the scene of an accident, but not with any OVI charges. Mother voluntarily placed the children with maternal grandparents following SCDJFS's involvement. After quickly completing her treatment at Quest Recovery, Mother and the children were reunited.

{¶4} In November, 2008, SCDJFS received new concerns regarding alcohol abuse. SCDJFS referred Mother to Community Services for treatment, however, she was inconsistent in her attendance. At the end of December, 2008, SCDJFS asked

Mother to place the children with maternal grandparents until she completed treatment. Mother complied with the request. Mother was unsuccessful in her treatment.

{¶5} At an adjudicatory hearing on June 3, 2009, Parents stipulated to a finding of dependency. The trial court deleted the allegation of neglect upon SCDJFS's motion. The trial court found the children to be dependent and ordered temporary custody be granted to SCDJFS. The trial court approved and adopted the case plans for Parents.

{¶6} On July 9, 2010, SCDJFS filed a Motion to Change Legal Custody, seeking to place D.P. and G.P. with Maternal Grandparents. The motion came on for hearing on September 13, 2010.

{¶7} Cheryl Siegfried, the ongoing case worker assigned to this matter, testified D.P. and G.P. had been in Maternal Grandparents' home since December, 2008. With respect to Father, Siegfried stated Father was required to complete an evaluation at Quest, follow any probationary orders regarding a DUI conviction, and also attend D.P.'s counseling sessions. Father completed his Quest evaluation and had negative urine drops throughout the proceeding. Siegfried explained Father was on probation for his second DUI. Father attended regular meetings with his probation officer. However, Father had not paid his fine and had been driving with the children at times not in conformance with his limited driving privileges. Father did not make any effort to get his driving privileges expanded.

{¶8} When asked about D.P.'s counseling, Siegfried explained the child has a lot of anxiety from Mother's abandonment. D.P. becomes very anxious and upset when Father is late bringing him to football practice. Siegfried had monthly conversations with Father expressing his need to attend D.P.'s counseling sessions in order to help him

understand D.P.'s behavior. Father never gave Siegfried a reason why he did not attend the sessions. At the time of the hearing, Father had attended only four of D.P.'s counseling sessions, including one a week or two prior to the hearing at which he showed up forty minutes late. Siegfried advised Father to call D.P.'s counselor if he was unable to attend. To her knowledge, Father had not had any phone conversations with the counselor.

{¶9} When Siegfried and the Goodwill parenting instructor spoke to Father about different kinds of foods which might contribute to D.P.'s ADD behavior, Father dismissed the conversation. Siegfried learned Father did not believe D.P. needed counseling. Although Father had never said as much to Siegfried, Siegfried believed his actions in not attending counseling showed such was not important to him. Siegfried also talked to Father about D.P.'s anxiety when going to his paternal grandparents' home and playing with his cousins in addition to the words Father uses with D.P. For example, Father called D.P. a "sissy" when the child became emotional.

{¶10} D.P. expressed his desire to remain with Maternal Grandparents, but have visitation with Father. At the time of the hearing and throughout the proceedings, Father was a full time student and his only source of income was school grants and loans. Finding and maintaining employment was part of Father's probation as well as part of his case plan.

{¶11} Siegfried testified D.P. and G.P. are very bonded to Maternal Grandparents and it is clear the children are very loved. D.P. and G.P. are very relaxed in Grandparents' home. Siegfried had been present during some of Father's visitations with the children, and noted G.P. became withdrawn and D.P. was anxious. Siegfried

opined it was in the children's best interest to grant legal custody to Maternal Grandparents. The children's bond with Maternal Grandparents was stronger than their bond with Father. Siegfried foresaw ongoing counseling for D.P. and expressed concerns regarding Father's unwillingness to attend those sessions. Siegfried stated SCDJFS had no objection to Father having visitation with the children. She indicated Maternal Grandparents stated they would never keep Father from the children.

{¶12} On cross-examination by SCDJFS's counsel, Father was asked if he had any explanation as for why D.P. wanted to remain with Maternal Grandparents. Father replied, "My opinion on that issue is that you are a young child eight years of age and where you are living you are treated like a king and put on a pedestal and then you go to your Father's house and you are treated like a prince where the discipline is a little more strict * * * think about where you would want to stay." Tr. at 26. Father had extended visitation with the children duing the summer of 2009, but did not make such arrangements for the following summer. Although Father asserted such was due to a lack of information or misinformation from Siegfried, Siegfried testified on rebuttal she clearly advised Father of what he must do in order to obtain extended visitation. Siegfried added Father never indicated to her he did not understand the procedure. He contacted Maternal Grandparents' attorney about extended visitation, but took no further action.

{¶13} The guardian ad litem filed a report, and supplemented such with testimony at the hearing. The guardian stated D.P. "has very clearly and never has wavered from a request to anyone that I have spoken with or to me that he wants to stay with his grandparents." The guardian added she and D.P. had developed a trust

relationship. The child clearly described to her actions by Father which she deemed inappropriate. Five year old G.P. supported her brother's statements. G.P. worried about her brother and the way Father treated him. G.P. told the guardian she did not wish to go to Father's home alone and did not feel protected from a paternal cousin. The guardian reiterated her strong recommendations the children remain with Maternal Grandparents. The guardian also noted D.P.'s anxiety was not part of his ADD, but rather the child suffered from clinical anxiety resulting from his life experiences.

{¶14} SCDJFS made a closing argument to the court. Counsel for Father waived closing argument. On the record, the court granted a change of legal custody of D.P. and G.P. to Maternal Grandparents. The trial court found based upon the evidence it heard it was in the children's best interest to remain with Maternal Grandparents. Father was given visitation as the parties agreed.

{¶15} The magistrate issued a decision on September 13, 2010, memorializing the ruling which was placed on the record. Father filed a motion to set aside the magistrate's order. The trial court conducted a hearing on the motion on November 22, 2010. Via Judgment Entry filed November 22, 1010, the trial court overruled Father's motion to set aside the magistrate's order.

{¶16} It is from this judgment entry Father appeals, raising the following assignments of error:

{¶17} "I. THE JUDGMENT OF THE TRIAL COURT GRANTING CHANGE OF LEGAL CUSTODY IN THE BEST INTERESTS OF THE CHILDREN WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶18} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.1(C).

I

{¶19} The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child. *In re N.P.,* 9th Dist. No. 21707, 2004-Ohio-110, at ¶ 23. The factors listed in R.C. 2151.414 may provide some guidance in determining whether a grant of legal custody is in the best interest of the children. *In re T.A.,* 9th Dist. No. 22954, 2006-Ohio-4468, at ¶ 17.

{¶20} In *In re Fulton,* 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, at ¶ 11, the Twelfth District Court of Appeals addressed a legal custody determination between parents in a neglect situation. The *Fulton* Court indicated, when determining the issue of legal custody, courts should consider the totality of the circumstances, including relevant factors of R.C. 3109.04(F). The *Fulton* Court, however, cautioned there is no statutory mandate those factors must be expressly considered and balanced together before fashioning an award of custody. *Fulton,* 2003-Ohio-5984, at ¶ 11. Accordingly, in legal custody cases, trial courts should consider all factors relevant to the best interest of the child.

{¶21} The R.C. 3109.04(F) factors for determining best interest in determining parental rights and responsibilities include:

{¶22} "(a) The wishes of the child's parents regarding the child's care;

**{¶23}** "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

**{¶24}** "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

**{¶25}** "(d) The child's adjustment to the child's home, school, and community;

**{¶26}** "(e) The mental and physical health of all persons involved in the situation;

**{¶27}** "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

**{¶28}** " * * *".  R.C. 3109.04(F)(1).

**{¶29}** The R.C. 2151.414 factors for determining best interest in dependency, neglect and abuse cases include:

**{¶30}** "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

**{¶31}** "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{¶32}** "(c) The custodial history of the child, * * *

**{¶33}** "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

**{¶34}** "* * *". R.C. 2151.414(D).

**{¶35}** As discussed, supra, the testimony presented at the hearing reveals the children have been living with Maternal Grandchildren since December, 2008. D.P. suffered from anxiety related to abandonment issues. Although part of Father's case plan required him to attend counseling with D.P., Father only attended four sessions. Father gave the guardian ad litem and ongoing case worker the impression he did not view D.P.'s problems as concerning. Appellant's attendance at D.P.'s counseling sessions did not improve during the summer while he was not attending classes and was not employed. Father drove the children outside the limitations placed upon his driving privileges due to his second DUI. Both children felt afraid at Father's home due to the behavior of a cousin and Father's use of inappropriate language. During visitation, D.P. was anxious and jumpy, and G.P. was withdrawn. The children are more bonded with Maternal Grandparents than with Father. Maternal Grandparents meet the children's needs in a consistent, positive manner. Maternal Grandparents are willing to facilitate visitation with Father. Father was given the opportunity to have extended visitation in the summer of 2010, but did not pursue the additional contact.

**{¶36}** Based upon the foregoing, we find the trial court's finding it was in the children's best interest to change legal custody to Maternal Grandparents was neither against the manifest weight of the evidence nor based upon insufficient evidence.

**{¶37}** Father's sole assignment of error is overruled.

{¶38} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, P.J.

Farmer, J.  and

Delaney, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN THE MATTER OF:

D.P. and G.P.                                    :
                                                 :
                                                 :
                                                 :
                                                 :
                                                 :         JUDGMENT ENTRY
                                                 :
                                                 :
                                                 :         Case No. 2010CA00348


      For the reasons stated in our accompanying Opinion, the judgment of the Stark

County Court of Common Pleas, Juvenile Division, is affirmed.  Costs assessed to

Appellant.



s/ William B. Hoffman                        
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer                          
HON. SHEILA G. FARMER


s/ Patricia A. Delaney                       
HON. PATRICIA A. DELANEY