[Cite as *In re N.D.*, 2023-Ohio-439.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| N.D. (DOB 01-12-08) | : | Hon. Patricia A. Delaney, J. |
| M.D. (DOB 7-14-09) | : | Hon. Craig R. Baldwin, J. |
| K.L.  (DOB 11-27-12) | : | |
| A.C. (DOB 05-13-16) | : | Case No. 2022CA00104 |
| J.R. (DOB 08-14-18) | : | 2022CA00105 |
| | : | 2022CA00106 |
| MINOR CHILDREN | : | 2022CA00107 |
| | : | 2022CA00108 |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court
of Common Pleas, Juvenile Division,
Case Nos. 2021JCV00297,
2021JCV00298, 2021JCV00299,
2021JCV00301, 2021JCV00302

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      February 14, 2023

APPEARANCES:

For Plaintiff-Appellee

BRANDON J. WALTENBAUGH
Stark County Department
of Job and Family Services
402 2nd Street SE
Canton, Ohio 44702

For Defendant-Appellant

BERNARD L. HUNT
2395 McGinty Rd N.W.
North Canton, Ohio 44720

*Baldwin, J.*

## STATEMENT OF THE FACTS AND THE CASE

{¶1} Tiffany Cottrill appeals the decision of the Stark County Common Pleas County, Juvenile Division, granting legal custody of her five children to their fathers, their prior legal custodians or kinship caregivers. Stark County Job and Family Services (SCJFS) is appellee.

## STATEMENT OF THE FACTS AND THE CASE

{¶2} SCJFS responded to a report that Cottrill's paramour, Randy Swoape, had been arrested for possession of drug paraphernalia, admitted to using methamphetamine and had a prior conviction for manufacturing methamphetamines. Cottrill refused access to the North Lawrence Police Department, and would not allow a home visit by a case worker on March 29, 2021 but agreed to a visit by an SCJFS case worker on the following day.

{¶3} The case worker appeared on March 30, 2021 and was permitted access to the home. The case worker discovered cameras installed in the home and a monitor in the basement in an area that was off limits to all but Mr. Swoape. Cottrill explained that she relied upon the cameras to supervise the children while she works.

{¶4} The case worker was able to interview the children and discovered that the oldest, N.D., thirteen years old at the time, was the primary caretaker for the children. He also described a violent confrontation between Cottrill and her father that happened December 24, 2020. He investigated the fighting that he heard and found blood everywhere. Cottrill admitted that her father had pulled a gun on her and she had to fight to get the gun away from him.

**{¶5}** One of the children reported that they had spent time prior to the case worker's visit cleaning the home with no help from Cottrill. They also reported that the home was usually very dirty and there was little or no food in the home.

**{¶6}** The case worker explained SCJFS's concern regarding Mr. Swoape's recent arrest and past conviction, both involving methamphetamine, but Cottrill was adamant that Mr. Swoape posed no risk to her children and she would not ask him to leave the home. She did agree to allow four of the children to be placed outside the home pending investigation, but would not sign a safety plan. The fifth child was currently on an overnight visit with his father.

**{¶7}** The following day Cottrill demanded that the children be returned and she and Swoape drove to the home where the children were placed and attempted to remove them. Swoape threatened violence if the children were not released. The police responded to the scene and the four children at the home were placed in the emergency custody of SCJFS pursuant to Juv. R. 6 (A)(3).

**{¶8}** A complaint alleging dependency, neglect or abuse of all of the children was filed on April 1, 2021. The children were found dependent and placed in the temporary custody of SCJFS on June 16, 2021. Ultimately, the children were placed as follows:

**{¶9}** N.D and M.D were placed together in kinship placement with Jason and Tifanie Kukwa.

**{¶10}** K. L. was placed with his father and stepmother, Eric and Stephanie Laster.

**{¶11}** J. R. was placed with his father David Rouzzo.

**{¶12}** A.C. was placed with her prior legal custodian Michael Phillips. Cottrill is not A.C.'s mother but was designated as her custodian with Michael Phillips in a prior case.

{¶13} The Court approved a case plan for Cottrill that included requirements that she maintain sobriety and seek mental health counseling. Cottrill's sobriety was monitored by random drug screens, described in the record as color coded. Once she established sobriety the case plan required that she attend a parenting class.

{¶14} Case plans were created for the fathers of the children, but none participated and none have appealed the trial court's disposition of this case, so we will not consider their involvement in the case.

{¶15} SCJFS moved to change legal custody of the children to their current physical placement on January 18, 2022 and that matter came before the court on April 26, 2022. Cottrill was the only parent who contested the motion, so SCJFS provided evidence regarding her response to the requirements of the case plan, her progress toward resolving the problems that caused the removal of the children from the home, and the best interests of the children.

{¶16} Cottrill missed forty color code drug screens during the case plan and was unable to demonstrate sobriety. Cottrill submitted to hair follicle tests for drugs in September and December 2021 and in March 2022 and all were positive for amphetamines and methamphetamines. After the last hair follicle test in March 2022, Cottrill failed to comply with any color code drug tests. Because Cottrell was unable to demonstrate sobriety during the case plan, she was not permitted to enter the Goodwill Parenting Program required by the case plan.

{¶17} Cottrill did participate in counseling, but SCJFS contended that her behaviors and her insight into her impact on the children did not change. Aimee Thomas, Ph.D. the psychologist who examined Cottrill, found that Cottrill failed to recognize how

her behavior was impacting the children, was very guarded about her substance abuse and could not agree that leaving her children in the care of their thirteen-year-old sibling was inappropriate.

{¶18} Dr. Thomas stated that a person can attend counseling and not change or show any progress. She explained that Cottrill could demonstrate improvement with an extended period of sobriety and changing her defiant, defensive stance to acceptance of personal responsibility for her behaviors and choices that have caused the trauma that the children have experienced. Cottrill's continued failure to comply with the color code drug screening plan suggested that she was abusing drugs and had not changed her behavior.

{¶19} The trial court granted legal custody of the children to the custodians with whom the children had been placed by SCJFS, either the fathers, next of kin or prior custodian.

{¶20} Cottrill filed a timely appeal and submitted one assignment of error:

{¶21} "I. THE JUDGMENT BY THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. THE JUDGMENT WAS AN ABUSE OF DISCRETION."

## STANDARD OF REVIEW

{¶22} Unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the court's standard of review in legal custody proceedings is a preponderance of the evidence. *In re S.D.*, 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013–Ohio–5752, ¶ 32; *In re A.C.,* 12th Dist. No. CA2006–

12–105, 2007–Ohio–3350 at ¶ 14; *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

**{¶23}** The statutes regarding an award of legal custody do not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child. *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188; *In re P.S.*, 5th Dist. Stark No. 2012CA00007, 2012-Ohio-3431. When determining the issue of legal custody, the trial court should consider the totality of the circumstances and all factors relevant to the best interest of the child. *In re D.T.,* 5th Dist. Stark No. 2013CA00252, 2014-Ohio-2495. "The statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.,* 9th Dist. No. 24317, 2009–Ohio–333 at ¶ 7, quoting *In re T.A.,* 9th Dist. No. 22954, 2006–Ohio–4468 at ¶ 17; *In re S.D.* 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013–Ohio–5752, ¶ 33.

**{¶24}** We review the trial court's award of legal custody for an abuse of discretion and recognize that a trial court has broad discretion in proceedings involving the care and custody of children. *In re R.D.J.,* 5th Dist. Delaware No. 12 CAF 07 0046, 2013–Ohio–1999, ¶ 29, quoting *In re Gales,* 10th Dist. No. 03AP–445, 2003–Ohio–6309; *In re Nice,* 141 Ohio App.3d 445, 455, 2001–Ohio–3214, 751 N.E.2d 552; *In re Mullen*, 129 Ohio St.3d 417, 2011–Ohio–3361, ¶ 14. Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**ANALYSIS**

{¶25}  Cottrill argues that the judgment by the trial court was against the manifest weight and sufficiency of the evidence and was an abuse of discretion. In support of her argument, she contends that her completion of case plan objectives warrant a reversal of the trial court's decision.

{¶26}  There is no dispute Mother made progress toward completion of portions of her case plan, but the primary goal is not to simply complete the case plan. *In re T.H.,* 5th Dist. Muskingum No. CT2016-0009, 2016-Ohio-7312, ¶ 42. Even the successful completion of a case plan is not dispositive on the issue of reunification. *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604. Where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *In the Matter of A.L. and J.L.*, 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481. While it may be in Cottrill's best interest to complete the case plan, this is only one factor for a trial court to consider in the best interest of the child, and, "in legal custody cases, trial courts should consider all factors relevant to the best interest of the child." *In the Matter of D.P. and G.P.,* 5th Dist. Stark No. 2010CA00348, 2011-Ohio-1907.

{¶27}  The issue in this case is whether the preponderance of the evidence demonstrated it was in the best interest of the children to grant legal custody to custodians. The trial court issued a detailed, thorough, and well-reasoned analysis as to why it determined it was in the best interest of the children to grant legal custody to the custodians. Mother contends she completed the case plan objectives and implies that she substantially remedied any problems leading to agency involvement, but the

testimony and evidence presented at the hearing do not support this conclusion. Cottrill made little progress toward improving her mental health and failed to demonstrate that she had resolved her abuse of amphetamines or methamphetamines.

**SUBSTANCE ABUSE**

**{¶28}** Appellee identified Cottrill's substance abuse as a concern that required attention at the outset of this case. Cottrill tested positive for methamphetamine on April 2, 2021 and the case plan included a directive that she complete a drug and alcohol assessment and comply with "all drug screens as requested by CommQuest and the agency." (Case Plan, April 26, 2021, p. 3). The requirement for drug screens was modified to obligate Cottrill to "submit to all requested drug screens by SCJFS or the service provider within 24 hours, including compliance with color code[1]. Any missed or refused screens will be considered positive." (Case plan, September 21, 2021, P. 4). The same requirement was contained within the case plan dated February 10, 2022.

**{¶29}** The Appellee provided evidence that Cottrill missed forty drug screens. In efforts to explore her sobriety after missing so many tests, Appellee requested that the Cottrill submit to hair follicle examination. The hair follicle examinations occurred in September 2021, December 2021 and the last test, administered in March 2022, was completed one month prior to the hearing on the motions for legal custody. All three examinations were positive for the presence of methamphetamines and amphetamines. Further, Cottrill did not submit to any further color code drug screens after March 2022.

---

[1] The record contains references to "color code" drug tests which, based upon the context of the comments regarding "color code", we conclude is a method of randomizing drug tests.

**{¶30}** Appellee suspected that Cottrill's failure to submit herself to further drug screens concealed a substance abuse problem that persisted. That suspicion was corroborated by Aimee Thomas, psychiatrist, who examined Cottrill at the beginning of the case and testified at the hearing on the motions for legal custody. When asked whether failing to attend tests indicated sobriety, Dr. Thomas testified that she would consider each missed screen a test positive for drug use unless there was some verified emergency that prevented the individual from appearing for drug screen. She concluded that missing approximately forty screens was problematic and would show that Cottrill is exhibiting the same "defiant behavior and trying to deny or minimize or hide." (Trial Transcript, p. 59, lines 9-10).

**{¶31}** Cottrill contended she missed drug screens due to her work schedule, but the record does not support her excuse. She finished work at 6:30 a.m. and had the remainder of the day to complete a drug screen. She offered no evidence to refute the positive hair follicle tests, but suggested that she may have accidently ingested an illegal substance.

**{¶32}** Cottrill's consistent failure to participate in drug screens and the positive hair follicle test prevented her from completing another portion of the case plan, the requirement that she attend the Goodwill Parenting Program. Goodwill required that parents establish sobriety before participating in the parenting program, and, because Cottrill consistently failed to submit to drug screens and because her hair follicle test were positive, she was not permitted to begin the program.

**COUNSELING**

{¶33}  Cottrill's case plan also reflected concerns regarding her mental health. She was required to "learn appropriate coping skills and stabilize her mental health * * * learn relapse and prevention skills that will help her maintain her sobriety" and learn "* * *the impact substance abuse and involvement has on family functioning and the risk it presents to her children." She was also obligated to "learn the risk presented to her children by the partners she chooses to bring around her children and how her choices negatively impact her children." (Case Plan 2.03, docket # 46, Sep., 21, 2021, p. 3).

{¶34}  The reports submitted by the counseling service indicated that Cottrill did not make progress toward improving her mental health but consistently attempted to shift blame to others. The counselor reported that Cottrill complained about Appellee and invested little time working toward her goals. At the outset of this case, Dr. Thomas found the outlook for Cottrill questionable at best "* * * due to her entrenchment and to her world view versus understanding that she needed to make some changes in her lifestyle for the sake of the children." (Trial Transcript, p. 52, lines 19-20). The doctor expected that "until she could accept personal responsibility for choices, changes were not going to occur." (Trial Transcript, p. 52, lines 22-23). The doctor's insights were confirmed as reports from the counselor demonstrated that Cottrill failed to make material progress to resolve problems that led to her inability to properly parent the children, to make choices that were in the children's best interest, and to maintain sobriety.

**CHILDREN'S INTERACTIONS**

{¶35} Cottrill did visit her children, but the visits served more to highlight Cottrill's lack of parenting skills than to promote reunification. The agency representative assigned to the case noted that Cottrill did not interact with all of her children equally but mostly focused on the youngest child to the exclusion of the other children. Further, Cottrill would bring gifts for one child but nothing for the other children leading to disappointment and bad feelings. This habit of not bringing equivalent gifts for of the children was brought to Cottrill's attention and she temporarily discontinued the practice, but she returned to the habit in later visits.

{¶36} With the exception of the youngest child, who was three years old at the time of the hearing, the children consistently stated that they had no desire reunify with Cottrill. The children expressed their concern to the guardian ad litem that they did not feel safe with Cottrill and would not feel safe if they returned to her custody.

{¶37} The guardian ad litem reported that the children were content in their current placement and strongly attached to their current custodians. The current custodians agreed to facilitate continued contact among siblings and the children were happy to have continued contact with each other. Health problems that the children exhibited prior to placement, including one child who suffered serious dental issues, were well on their way to being resolved.

{¶38} The children were placed in the legal custody of the persons who served as placements at the very beginning of this case. Cottrill objected to these placements, but provided no evidence that could be described as contradicting the trial court's finding that she had not remedied the problems that caused the removal of the children from the home

and that the grant of legal custody was in the best interest of the children. After reviewing the record and the elements of R.C. 2515.414(D) regarding the best interest of the children, we conclude that the trial court did not abuse its discretion when it determined that Cottrill has failed to remedy the problems that caused the removal of the children from the home and that it was in the best interest of the children to grant legal custody to the parties requesting it. Further, we find sufficient evidence to support the trial court's conclusion and reject Cottrill's contention that the trial court's decision was against the manifest weight of the evidence.

{¶39} Cottrill's assignment of error is overruled.

{¶40} The decision of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By: Baldwin, J.

Wise, John, P.J. and

Delaney, J. concur.