[Cite as *In re D.H.*, 2023-Ohio-1580.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| | :     JUDGES: |
| | : |
| | :     Hon. John W. Wise, P.J. |
| | :     Hon. Patricia A. Delaney, J. |
| | :     Hon. Andrew J. King, J. |
| IN RE D.H. | : |
| | :     Case No. 2023 CA 0003 |
| | : |
| | : |
| | : |
| | : |
| | : |
| | :     O P I N I O N |


CHARACTER OF PROCEEDING:         Appeal from the Richland County Court
of Common Pleas, Juvenile Division,
Case No. 2020 DEP 00153


JUDGMENT:                      AFFIRMED


DATE OF JUDGMENT ENTRY:         May 11, 2023


APPEARANCES:

For Mother-Appellant:                 For RCCSB-Appellee:

JAMES L. BLUNT II                          SARAH E. EXTEN
3954 Industrial Parkway              RICHLAND COUNTY CHILDREN SERVICES
Shelby, OH 44875                      731 Scholl Road
Mansfield, OH 44907

*Delaney, J.*

{¶1} Mother-Appellant S.L. appeals the January 4, 2023 judgment entry of the Richland County Court of Common Pleas, Juvenile Division.

## FACTS AND PROCEDURAL HISTORY

{¶2} Mother-Appellant S.L. is the biological mother of D.H., born in September 2009. Father, E.H. is not married to Mother and is not involved in this appeal. Mother has two other minor children, S.L. and D.M., half-siblings to D.H. The three children resided with Mother.

{¶3} Appellee, Richland County Children Services Board ("RCCSB") had been informally involved with Mother and the three children due to Mother's mental health issues. On October 8, 2020, RCCSB filed a complaint with the Richland County Court of Common Pleas, Juvenile Court, alleging D.H. was a dependent and negligent child and requesting an order of protective supervision. D.H. had been diagnosed with high-risk epilepsy that was managed with two daily prescription medications. RCCSB stated it had received reports that Mother was not giving D.H. his medications, which placed D.H. at a high risk for medical issues and death. D.H. required regular testing to monitor his medication levels, but he had not been seen by his medical provider since November 2019 and his prescriptions were last filled in June 2020. RCCSB attempted to contact Mother, but she would not answer the door. D.H.'s school was unable to contact Mother. RCCSB believed that based on Mother's mental health history, she was experiencing a severe depressive episode.

{¶4} The initial adjudicatory hearing was held on October 14, 2020. The juvenile court appointed a Guardian ad Litem for the children.

{¶5} On November 9, 2020, RCCSB filed Mother's proposed case plan. The case plan required Mother to complete a mental health assessment, follow all recommendations, actively participate in her mental health treatment plan, and complete parenting education. Mother was also required to communicate with the RCCSB caseworker during announced and unannounced visits. Mother refused to sign the proposed case plan.

{¶6} The second adjudicatory hearing was held on November 6, 2020, with resulting judgment entry filed on November 17, 2020. Mother elected to admit and agree that D.H. was a dependent child. RCCSB withdrew its claim of neglect. After she left the hearing, Mother was charged with assault based on an incident with a relative in the court parking lot. Father later admitted and agreed that D.H. was a dependent child, via judgment entry filed December 3, 2020.

{¶7} On November 20, 2020, Father filed a motion for temporary custody. Father requested the juvenile court place D.H. in the temporary custody of Paternal Grandmother, L. H. Father simultaneously filed a motion for legal custody, arguing the juvenile court should award legal custody of D.H. to Paternal Grandmother. RCCSB filed a motion to amend disposition that its request for an order for protective supervision to RCCSB be amended to a request for temporary custody to Paternal Grandmother with an order of protective supervision to RCCSB.

{¶8} The GAL filed her written report on December 7, 2020. The GAL recommended it was in the best interests of the children to remain in the custody of Mother with an order of protective supervision to monitor Mother's legal issues, her mental health, and D.H.'s medical care.

{¶9}    The dispositional hearing was held on December 7, 2020.

{¶10} On December 8, 2020, the juvenile court granted Father and RCCSB's motion for temporary custody. It ordered that it was in the best interests of D.H. to be placed in the temporary custody of Paternal Grandmother. Thereafter, Mother filed a motion for disposition of legal custody or retention of custody of D.H. by Mother. Mother also requested the juvenile court conduct an in-camera interview of D.H. The in-camera interview was scheduled for April 6, 2021 and then continued to August 3, 2021.

{¶11} On December 24, 2020, the juvenile court issued its judgment as to the dispositional hearing. The juvenile court found that Paternal Grandmother and maternal relatives regularly assisted Mother with D.H.'s care. D.H. had epilepsy and Mother was not consistent with his care. On December 2, 2020, after RCCSB's intervention, D.H. was seen by his medical provider and it was determined D.H. did not have the proper levels of medication to control his epilepsy, possibly rendering rescue medication ineffective if D.H. had a seizure. Upon inspection of D.H.'s prescription medication, a caseworker determined one prescription bottle was unopened and one had not been filled. While in her written report, the GAL recommended that RCCSB be granted protective supervision of D.H., at the hearing, the GAL recommended that D.H. be placed in the temporary custody of Paternal Grandmother with an order of protective supervision to RCCSB. The juvenile court concluded it was in the best interest of D.H. that he be placed in the temporary custody of Paternal Grandmother and that protective supervision be granted to RCCSB. The juvenile court denied Father's motion for legal custody to Paternal Grandmother.

{¶12} On January 14, 2021, RCCSB moved the juvenile court to order Mother to undergo a psychological evaluation and assessment with Dr. Aimee Thomas at Lighthouse Family Center. Mother objected to the motion. On April 27, 2021, the juvenile court ordered Mother to undergo a psychological evaluation.

{¶13} A proposed case plan amendment was filed on January 15, 2021. The amended plan added a case plan participant, placement change, modified concerns, and a visitation plan. On April 8, 2021, RCCSB filed another proposed case plan amendment. The basis for the amendment was that D.H.'s two siblings were placed in the temporary custody of one of the sibling's paternal aunt. As a non-relative to the other siblings, the juvenile court named her the "Fictive Kin." The Fictive Kin would supervise visitation between Mother and D.H.

{¶14} The GAL filed her written report on June 29, 2021. She recommended that D.H. be placed in the temporary custody of Paternal Grandmother, with a continued order of protective supervision.

{¶15} In July 2021, Mother's case plan was amended to increase visitation between D.H. and her. Mother was allowed unsupervised visitation with D.H. and one overnight visit per week.

{¶16} The GAL filed an updated written report on September 2, 2021. She recommended that D.H. be placed in the temporary custody of Paternal Grandmother, with a continued order of protective supervision by RCCSB. She further recommended that the Fictive Kin be given consideration as a long-term, permanency placement for all three children if they were unable to be reunified with Mother.

{¶17} On September 9, 2021, the juvenile court held a dispositional hearing on the pending motions regarding temporary and legal custody of D.H. Via judgment entry filed on September 21, 2021, the juvenile court ordered that D.H., who was currently placed in the temporary custody of Paternal Grandmother, be placed in the temporary custody of the Fictive Kin with a continuing order of protective supervision to RCCSB.

{¶18} While the juvenile court ordered that the Fictive Kin gain temporary custody of all three children, D.H. continued to live with Paternal Grandmother. RCCSB amended D.H.'s case plan to reflect the living arrangement and to adjust Mother's visitation to unsupervised visitation overnight, Friday evening through Sunday evening. On March 15, 2022, the GAL filed a written report recommending that the two siblings be placed in the legal custody of the Fictive Kin and D.H. be placed in the legal custody of Paternal Grandmother.

{¶19} RCCSB filed an amended motion for disposition on March 31, 2022, stating it was in the best interest of D.H. that temporary custody to the Fictive Kin be terminated, the order of protective supervision be terminated, and legal custody to Paternal Grandmother be granted. RCCSB also filed a motion for temporary order of temporary custody to Paternal Grandmother. Mother objected to the motion for legal custody. On May 3, 2022, the juvenile court granted temporary custody of D.H. to Paternal Grandmother.

{¶20} On July 21, 2022, the GAL filed her written report, continuing her recommendation that the two siblings be placed in the legal custody of the Fictive Kin and D.H. be placed in the legal custody of Paternal Grandmother. She also recommended liberal visitation between the siblings, Mother, respective fathers, and relatives.

{¶21} The juvenile court held a legal custody hearing before the magistrate on July 28, 2022. Aleesia Shaw, the ongoing caseworker with RCCSB, testified as to her work with Mother and D.H. In August 2020, RCCSB began working with Mother and the children when it learned that Mother was not giving D.H. his medication. (T. 6). Due to Mother's failure to cooperate with RCCSB, RCCSB filed the complaint in juvenile court.

{¶22} RCCSB developed a case plan for Mother that required self-protection, mental health, and parenting education. (T. 6-7). As of the date of the hearing, Mother had not completed her case plan. Mother participated in mental health counseling for two months in early 2021. (T. 8). She was discharged for failure to cooperate in counseling. She completed a full psychiatric evaluation with Dr. Thomas in June 2021. (T. 8). Dr. Thomas diagnosed Mother with Major Depressive Disorder Recurrent with Paranoid Ideation and Paranoid Personality Disorder. (T. 10). Dr. Thomas ruled out schizophrenia or schizoaffective disorder and intellectual disabilities mild. (T. 10). Dr. Thomas recommended Mother have ongoing psychiatric counseling and parenting education. (T. 9). Mother self-reported that she started mental health counseling two weeks before the hearing. (T. 11). RCCSB did not consider Mother compliant with the mental health portion of her case plan because she just started mental health counseling. (T. 11).

{¶23} Another part of Mother's case plan was to ensure D.H. received his prescribed medication. (T. 11). Early in Mother's visitation with D.H., there was concern that she was not providing D.H. his medication. Paternal Grandmother counted D.H.'s pills before and after he visited Mother to ensure he had taken his medicine. (T. 51). Paternal Grandmother provided D.H. his medication and took him to his doctor's appointments.

{¶24} Mother obtained employment the week of the hearing. (T. 13). Mother had rental housing. (T. 13). Mother started parenting classes in 2021 but was discharged from the program due to Mother's uncooperativeness. (T. 13). Mother tried to reenroll in 2022, but due to Mother's behavior, the parenting education program would not accept her. (T. 14). Mother found a different parenting program, enrolled, and had completed two sessions as the time of the hearing. (T. 14).

{¶25} RCCSB determined Paternal Grandmother's home was appropriate for D.H. (T. 15). D.H.'s father lived with Paternal Grandmother. Other than his epilepsy, D.H. had no other medical or mental health issues. (T. 15). D.H. regularly attended school but his grades had been low. Paternal Grandmother got D.H. a tutor to come to the home and D.H.'s grades improved. (T. 41).

{¶26} D.H. was placed in the temporary custody of Paternal Grandmother and in March 2021, the two other children were placed in the temporary custody of the Fictive Kin because the children were not attending school. (T. 7). One of the children required a truancy hearing. (T. 8). Mother and the three children had regular visitation with each other, facilitated by Paternal Grandmother and the Fictive Kin. (T. 18). During the school year, D.H. went to Mother's home on Friday and came back on Sunday. (T. 46). D.H. reported that he would like to live with Mother again. Compared to Mother's household, Paternal Grandmother maintained more rules and structure. (T. 30).

{¶27} Mother testified that she struggled with depression and anxiety. It prevented her from working until recently. (T. 81). It prevented her from getting her children to school. (T. 86). After she was discharged from her mental health counseling, she did not resume counseling because she felt uncomfortable. (T. 80). Mother admitted

that initially, she felt that she did not need parenting classes. (T. 83). After the two-year pendency of the case, Mother started counseling and enrolled in parenting classes per her case plan requirements. (T. 86). She was currently taking medication prescribed by her primary care physician to address her depression and anxiety. (T. 90-91, 98). She also had a family support system, which included the Fictive Kin, to help her. (T. 94).

{¶28} Mother understood that D.H. needed to take his medication regularly, but at the time D.H. was removed from her care, she did not see the problem when he missed his doses. (T. 83). She did not understand at the time that if D.H. had a seizure, he could die. (T. 96). She admitted that even with the family support system to help her with D.H.'s medication, her stubbornness would get in the way. (T. 95). When she had visitation with D.H., she made sure D.H. took his three daily doses of medication, but also stated that D.H. ould take them on his own. (T. 90).

{¶29} The magistrate issued his decision on August 23, 2022. He found it was in the best interests of D.H. that legal custody be granted to Paternal Grandmother and protective supervision to RCCSB be terminated. Mother filed objections to the magistrate's decision, arguing the magistrate's findings of fact and conclusions of law were not supported by the sufficiency or the manifest weight of the evidence. On January 4, 2023, the juvenile court overruled Mother's objections. It found the evidence supported the magistrate's findings that Mother failed to comply with her case plan in obtaining mental health treatment or complete a parenting education class in the two years the matter was pending. The juvenile court further found that Mother was unlikely to faithfully administer D.H.'s medication. The evidence showed that D.H. wanted to stay with Mother

because she had few rules and responsibilities for him. The juvenile court then adopted the August 23, 2022 magistrate's decision.

{¶30} It is from this judgment that Mother now appeals.

## ASSIGNMENTS OF ERROR

{¶31} In her Statement of Assignment of Errors, Mother raises two Assignments of Error[1]:

{¶32} "I. WHETHER THE TRIAL COURT ERRED BY FINDING THAT APPELLANT FAILED TO [SIC] SIGNIFICANT PROGRESS ON THE CASE PLAN TO AMELIORATE THE ISSUES WHICH CAUSED THE CHILDREN TO BE REMOVED.

{¶33} "II. WHETHER THE TRIAL COURT ERRED BY GRANTING LEGAL CUSTODY TO A GRANDPARENT/AUNT."

## ANALYSIS

### I. and II.

{¶34} We consider Mother's two Assignments of Error together because they are interrelated. Mother contends the juvenile court erred in granting legal custody of D.H. to Paternal Grandmother. We disagree.

{¶35} Paternal Grandmother is a non-parent. Before awarding legal custody to a non-parent, a trial court must ordinarily make a finding that each parent is unsuitable. *In re L.P.*, 5th Dist. Muskingum No. CT2016-0045, 2017-Ohio-52, 2017 WL 74719, ¶ 18

---

[1] Mother recited two Assignments of Error in her "Statement of Assignments of Error." The "Table of Contents" in Mother's appellant's brief, however, includes a third Assignment of Error, which states: "II. WHETHER RICHLAND COUNTY CHILDREN SERVICES ENGAGED [SIC] REASONABLE EFFORTS TO REUNITE THE CHILDREN WITH A PARENT." Pursuant to App.R. 16(A)(1), the Appellant is required to include a table of contents, but pursuant to App.R. 16(A)(3), the Appellant is required to include "a statement of the assignments of error presented for review, with reference to the place in the record where each record is reflected." As such, we only consider Mother's Assignments of Error properly listed pursuant to App.R. 16(A)(3).

citing *In re L.M.*, 2nd Dist. Greene No. 2010-CA-76, 2011-Ohio-3285, 2011 WL 2584195, ¶ 18 citing *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971. This requirement does not apply, however, in cases involving abuse, neglect, or dependency. *Id.* The Ohio Supreme Court in *In re C.R.* held "[a] juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, paragraph one of syllabus. Thus, "[w]hen a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." *In re L.M.,* 2011-Ohio-3285 quoting In re C.R., 108 Ohio St.3d 369, 2006 - Ohio- 1191, 843 N.E.2d 1188, paragraph two of syllabus.

{¶36} In this case, D.H. was adjudicated a dependent child.

### Standard of Review

{¶37} Custody issues are some of the most difficult and agonizing decisions a trial court judge must make; for that reason, the trial court is given "wide latitude in considering all the evidence." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, 953 N.E.2d 302, ¶ 14. We review the award of legal custody for an abuse of discretion. *In re L.D.* at ¶ 8; *In re Gales*, 10th Dist. No. 03AP-445, 2003-Ohio-6309, 2003 WL 22785029, ¶ 13; *In re N.F.*, 10th Dist. No. 08AP-1038, 2009-Ohio-2986, 2009 WL 1798146, ¶ 9, citing *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001). Abuse of discretion connotes more

than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). We must presume that the trial court's findings are correct because the trial court is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Therefore, deferential review in a child custody determination is especially crucial "where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis* at 419, 674 N.E.2d 1159.

{¶38} Unlike a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is a preponderance of the evidence. *In re J.W.*, 5th Dist. Richland No. 2021 CA 0007, 2021-Ohio-2917, 2021 WL 3747036, ¶ 40; *In re S.D.*, 5th Dist. Stark Nos. 2013CA0081, 2013-Ohio-5752, 2013 WL 6844490, ¶ 32; *In re A.C.*, 12th Dist. No. CA2006-12-105, 2007-Ohio-3350, 2007 WL 1880600 at ¶ 14; *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

### Case Plan Progress

{¶39} In Mother's first Assignment of Error, she contends the juvenile court erred when it found Mother had not progressed on her case plan so that she could be reunified with D.H. There is no dispute Mother made progress toward completion of portions of her case plan, but the primary goal is not to simply complete the case plan. *In re T.H.*, 5th Dist. Muskingum No. CT2016-0009, 2016-Ohio-7312, 2016 WL 5940835, ¶ 42. Even the successful completion of a case plan is not dispositive on the issue of reunification. *In re*

*W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604, 2014 WL 688653. Where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *Matter of N.D.*, 5th Dist. Stark No. 2022CA00104, 2023-Ohio-439, 2023 WL 1992085, ¶ 26 citing *In the Matter of A.L. and J.L.*, 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481, 2012 WL 424928. While it may be in Mother's best interest to complete the case plan, this is only one factor for the juvenile court to consider in the best interest of the child, and, "in legal custody cases, trial courts should consider all factors relevant to the best interest of the child." *In the Matter of D.P. and G.P.*, 5th Dist. Stark No. 2010CA00348, 2011-Ohio-1907, 2011 WL 1533158.

{¶40} Mother argues that a major case plan requirement was for Mother to provide D.H. his medication. Mother states the record shows she met this requirement because when D.H. had visitation with Mother, D.H. received his medication. The record shows there were more elements to the management of D.H.'s epilepsy than just D.H. taking his medication. Paternal Grandmother sent D.H.'s medication with him when he visited Mother. Paternal Grandmother counted the pills before and after Mother's visitation to confirm that Mother provided D.H. with his medication. Paternal Grandmother filled D.H.'s prescriptions and took D.H. to his medical appointments to ensure he was properly medicated to manage his epilepsy.

{¶41} Mother's case plan, created in November 2020 and which Mother initially refused to sign, also required Mother to engage in mental health treatment and parenting education. At the legal custody hearing in July 2022, the RCCSB caseworker testified that

Mother engaged in mental health counseling approximately two weeks before the hearing. The RCCSB caseworker testified that Mother enrolled in a parenting education program a few weeks before the hearing.

{¶42} Mother's progress on her case plan is but one factor to consider in determining whether granting legal custody of D.H. to Paternal Grandmother was in his best interests.

**Best Interests of the Child**

{¶43} In this type of dispositional hearing, the focus is on the best interest of the child. *In re T.B.*, 5th Dist. Muskingum No. CT2018-0065, 2019-Ohio-1747, 2019 WL 2041906, ¶ 26 citing *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188; *In re P.S.*, 5th Dist. No. 2012CA00007, 2012-Ohio-3431, 2012 WL 3068423. Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.*, 9th Dist. No. 24317, 2009-Ohio-333, 2009 WL 187959 at ¶ 7, citing *In re T.A.*, 9th Dist. No. 22954, 2006-Ohio-4468, 2006 WL 2484165 at ¶ 17; *In re S.D.*, 5th Dist. Stark Nos. 2013CA0081, 2013-Ohio-5752, 2013 WL 6844490, ¶ 33. R.C. 2151.414(D) sets forth factors to be considered in making a determination regarding the best interest of the child.

{¶44} In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody. *In re J.W.*, 2021-Ohio-2917, ¶ 42 citing *In re M.T.*, 9th Dist. Summit No. 29690, 2020-Ohio-5493, 2020 WL 7055379, ¶ 20 citing *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, 2008 WL

4409464, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. *In re M.T.* at ¶ 20 citing R.C. 2151.414(D)(1)(a)-(e). In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re M.T.* at ¶ 20 citing *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 2017-Ohio-1, 2017 WL 27378, ¶ 17. "While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; whether a parent plans to or has established a residence outside of Ohio; and certain indicia of violence, abuse, or neglect in any household involved. R.C. 3109.04(F)(1). Such indicia include convictions relating to the abuse or neglect of a child, as well as whether there exists any 'reason to believe that either parent has acted in a manner resulting in a child being an abused or a neglected child[.]' R.C. 3109.04(F)(1)(h)." *Id.* at ¶ 20.

{¶45} We find the preponderance of the evidence supports the juvenile court's determination that it was in the best interests of D.H. to be placed in the legal custody of Paternal Grandmother. At the time of the hearing, D.H. had been in the care of Paternal Grandmother for approximately 20 months. Paternal Grandmother ensured that D.H. was attending regular medical appointments and taking his medication to manage his epilepsy. D.H.'s grades had been low and during Paternal Grandmother's care, D.H.'s grades improved by attending school regularly and receiving the help of a tutor. Paternal Grandmother kept more structure in her home than Mother, which as a teenager, was

challenging for D.H. He said that he wanted to return to living with Mother. D.H. had successful unsupervised, overnight visitations with Mother where he took his medication, but after Paternal Grandmother provided and monitored the medication. The record in this case showed that Paternal Grandmother, Mother, and the Fictive Kin worked together as an interrelated unit, cooperating and supporting each other and the three children to maintain their relationships and succeed. The preponderance of the evidence demonstrates that the custodial history of D.H., the appropriate management of D.H.'s epilepsy by Paternal Grandmother, the improved management of D.H.'s education, D.H.'s need for permanence, and Paternal Grandmother's success in maintaining D.H.'s relationship with his siblings and Mother supports the juvenile court's determination that it is in the best interests of D.H. to be placed in the legal custody of Paternal Grandmother.

{¶46} Mother's two Assignments of Error are overruled.

**CONCLUSION**

{¶47} The judgment of the Richland County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Wise, John, P.J. and

King, J., concur.